# COMMISSIONER OF SECURITIES & INSURANCE

MONICA J. LINDEEN
COMMISSIONER



OFFICE OF THE MONTANA
STATE AUDITOR

May 12, 2015

<u>CERTIFIED RETURN RECEIPT MAIL</u>

Jonathan D. Kantor
Columbia Casualty Company
333 S. Wabash, 43S
Chicago, IL 60604

Dear Mr. Kantordr:

Attached is a *Summons* and a *Complaint and Jury Demand* in the case of:

FIRST INTERSTATE BANK, a Montana
Corporation,

Plaintiff,

v.

COLUMBIA CASUALTY CORPORATION,
a wholly owned subsidiary of CAN, BANCSERVE,
INC., a Montana Corporation, AH&T, a Virginia
Company

Defendant,

originating in the District Court of the Thirteenth Judicial District of the State of
Montana, in and for the county of Yellowstone.

Service of process was made May 7, 2015, upon the Commissioner of Securities and
Insurance, Montana State Auditor, in conformity with the provisions of the Montana
Code.  Please contact Darla Sautter at (406) 444-2726 with any questions.

Sincerely,

JESSE LASLOVICH
Chief Legal Counsel

JL/ds
Enclosures

cc:   Martha Sheehy
      Attorney for Plaintiff

Martha Sheehy
SHEEHY LAW FIRM
P. O. Box 584
Billings, Montana 59103-0584
Telephone: (406) 252-2004
msheehy@sheehylawfirm.com

Attorney for Plaintiff First Interstate Bank

MONTANA THIRTEENTH JUDICIAL DISTRICT, YELLOWSTONE COUNTY

| | |
|---|---|
| FIRST INTERSTATE BANK, a Montana Corporation, | Cause No. DV 15 - 0 5 6 9 |
| | MARY JANE KNISELY |
| Plaintiff, | **SUMMONS** |
| -vs- | |
| COLUMBIA CASUALTY COMPANY, a wholly owned subsidiary of CNA, BANCSERVE, INC., a Montana Corporation, AH&T, a Virginia company. | |
| Defendants. | |

TO: Columbia Casualty Company, 333 S. Wabash Avenue, Chicago, IL 60604-4107:

THE STATE OF MONTANA TO THE ABOVE-NAMED DEFENDANT, GREETINGS:

The attached Complaint has been filed in this Court stating a claim or claims against you. You are hereby summoned to answer the complain in this action which is filed in the office of the clerk of this court, a copy of which is hereby served upon you, and to file your answer and serve a copy thereof upon Plaintiff's attorney, Martha Sheehy, P.O. Box 584, Billing MT 59103, within 20 days after the service of this summons, exclusive of the day of service; and in the case of your failure to appear or answer, judgment will be taken against you in default for the relief demanded in this complaint.

WITNESS my hand and seal of said COURT on this 6th day of May, 2015.

KRISTI LEE BOELTER, CLERK OF COURT

By _Rebecca Merry_
            Deputy Clerk

Martha Sheehy
SHEEHY LAW FIRM
P. O. Box 584
Billings, Montana 59103-0584
Telephone: (406) 252-2004
msheehy@sheehylawfirm.com



Attorney for Plaintiff First Interstate Bank

MONTANA THIRTEENTH JUDICIAL DISTRICT, YELLOWSTONE COUNTY

| | |
|---|---|
| FIRST INTERSTATE BANK, a Montana Corporation, | Cause No. DV 15 - 0569 |
| | MARY JANE KNISELY |
| Plaintiff, | COMPLAINT AND JURY DEMAND |
| -vs- | |
| COLUMBIA CASUALTY COMPANY, a wholly owned subsidiary of CNA, BANCSERVE, INC., a Montana Corporation, and AH&T, a Virginia company. | |
| Defendants. | |

COMES NOW Plaintiff First Interstate Bank, by and through its counsel of record,

Martha Sheehy, and for its Complaint states and alleges as follows:

## JURISDICTION and VENUE

1.    Plaintiff First Interstate Bank ("First Interstate") is a corporation organized and existing

under and by virtue of the laws of the state of Montana with its principal place of business

in Billings, Yellowstone County, Montana.  As such, First Interstate is a citizen and

resident of Montana.

2.    Columbia Casualty Company ("Columbia Casualty") is a corporation organized, existing,

-1-

and residing under the laws of the State of Illinois with its principal place of business located at CNA Plaza, Chicago, Illinois. Columbia Casualty Company is a wholly owned subsidiary of CNA. As such, Columbia Casualty Company is a citizen and resident of Illinois.

3.      CNA is a corporation organized, existing, and residing under the laws of the State of Illinois with its principal place of business located at CNA Plaza, Chicago, Illinois. As such, CNA is a citizen and resident of Illinois.

4.      BancServe, Inc., is a corporation organized, existing, and residing under the laws of Montana, with its principal place of business in Helena, Montana. As such, BancServe is a citizen and resident of Montana.

5.      Tempi Ruth is employed by BancServe as an insurance broker and sales director. She is a resident of Montana and a citizen of Montana.

6.      AH&T Insurance is a privately held company with a principal place of business in Leesburg, Virginia.

7.      Columbia Casualty Company insures First Interstate through an insurance package consisting of four parts. ("Insurance Package")

8.      First Interstate is the defendant in a state court civil action captioned *Kelly Logging, Inc. v. First Interstate Bank*, Cause No. DV-12-928, Fourth Judicial District, Missoula County, Montana ("Kelly Logging Action").

9.      Venue is proper pursuant to 25-2-121 and -122, MCA.

## FACTS COMMON TO ALL CLAIMS

**The Columbia Casualty Insurance Package**

10.   Prior to October 2011, First Interstate was insured by BancInsure Professional Liability Policy, PLI 0010643 for numerous years.  That policy provided Professional Liability Insurance, Employment Practices Liability, Company Security Liability.  The BancInsure policy provided coverage for punitive damages for all of these coverages.  The policy's limit of liability was $10,000,000 and with a retention of $500,000.

11.   In 2011, BancInsure's rating was declining, First Interstate determined that it should seek similar coverage from a higher rated insurance company.

12.   First Interstate's risk manager, Phil Gaglia, asked its insurance broker BancServe, and particularly Tempi Ruth of BancServe, to obtain bids for a policy to replace the BancInsure coverages.  First Interstate requested the same coverages with a higher rated firm.

13.   Ruth and BancServe obtained several bids.  Some companies did not provide the same coverages provided by the BancInsure policy, and First Interstate rejected those bids. Ruth procured a bid, and eventually a policy, from CNA to replace the coverages held by First Interstate under the BancInsure policy.

14.   Beginning in 2011, pursuant to the advice of Tempi Ruth and BancServe, First Interstate procured a package of insurance from CNA, listing its subsidiary, Columbia Casualty, as the insurer.  The package consists of four parts: Bankers Professional Liability Solutions Policy, a Managers and Professional Liability Policy, an Employment Practices Liability Solutions Policy and a Fiduciary Liability Solutions Policy.

15.   Ruth identified some changes in the policy terms between the BancInsure policy and the CNA policy.  She informed First Interstate that the premium increased, and the retention

-3-

amount increased.  This increased the cost of the coverage, but Ruth represented that otherwise, the CNA policy replaced the BancInsure policy.

16.    At no time did Ruth identify any differences in the CNA and BancInsure policies with respect to punitive damages coverage.

17.    The four-part package was procured to replace the coverages provided by the BancInsure policy.  The four policies which comprise the Columbia Casualty insurance package applicable to this claim have a policy period from 10/1/2012 to 10/1/2013, and aggregate limits of $10,000,000.

18.    In the Columbia Casualty insurance package, BPL Policy and the Management Solutions Policy are subject to a retention of $1,000,000.  Defense costs are included in the $1,000,000 retention.

19.    The insurance package provided by Columbia Casualty contains numerous definitions of "Loss."  Each part of the package contains a separate and different definition of the term. Three definitions in the Columbia Casualty insurance package include "punitive damages" within the definition of "loss."  Contrary to the usual, dictionary definition of "loss" suffered by an insured sued for a wrongful act, the definition of "loss" in the Bankers Professional Liability Solutions Policy, ("the BPL Policy") exempts punitive and exemplary damages from the definition of "Loss" contained in the primary part of that policy. This exemption is the tenth item in a long list of explanatory definitions involving things that would not generally fit within the usual, dictionary definition of loss.

20.    At all times pertinent to this litigation, Columbia Casualty insured First Interstate for Wrongful Lending Acts as part of the insurance package.  The Wrongful Lending Act

coverage was provided by an endorsement to one part of its insurance package, the BPL Policy.

21.    The BPL Policy in its primary part provides coverage for a Loss resulting from a Claim for a Wrongful Act. "Wrongful Act" means "any actual or alleged error, misstatement, misleading statement, act, or omission, neglect or breach of duty committed or attempted by the Insureds."

22.    The Lender Liability Coverage Endorsement amends the BPL Policy to provide coverage for "Lending Acts." "Lending Act means a Wrongful Act by or on behalf of Insured Entity for a Borrower relating to an extension of credit, a refusal to extend credit or an agreement to extend credit."

23.    The Lender Liability Endorsement does not add a stand-alone policy part to provide Lender Liability coverage.  Instead, coverage for Lender Liability is added to the BPL policy by amending the "Definitions" contained in the BPL coverage.

24.    The Lender Liability Endorsement amends the BPL's Definitions in two ways.  First, the Endorsement restricts coverage available under the Endorsement by amending the definition of "Loss" to exempt coverage for principle, interest or other monies paid, accrued or due to the **Insured Entity** relating to or in connection with a **Lending Act.**" Second, the Endorsement amends BPL's "Definitions," adding the definitions of **"Lending Act"** and **"Lending Act Claim."**  The amendment does not restrict the added coverage definitions to any specific definition, but instead adds the coverage to all "Definitions."

25.    The expansion of coverage provided by the Endorsement is clearly stated in the

Definition of "Lending Act Claim," which "means **any Claim** arising out of a Lending

Act."

26.   The Lending Liability Endorsement contains no exclusion for coverage for punitive

damage claims arising from a Lending Act.  To the contrary, the definition expands

coverage to "any claim arising out of a Lending Act."

27.   In addition to the lack of exclusion for punitive damages in the Endorsement, none of the

other parts of the insurance package contains an exclusion for punitive damages.  The

BPL Policy part contains no exclusion for punitive damages.

28.   Within the Bankers Liability policy, retention amount applies differently to claims under

the BPL Policy and the Lender Liability Endorsement.

29.   In 2013, as part of risk management, First Interstate hired  AH&T, a nationally

recognized risk management consultant.  First Interstate retained AH&T to review the

adequacy of its insurance coverages.  AH&T reviewed the Columbia Casualty insurance

package at issue in this lawsuit and provided a 50-page report.  AH&T noted the key

coverage descriptions, limits and retentions in each of the four parts of the policy.

30.   AH&T, in reviewing the Columbia Casualty coverage, did not identify the definition of

loss in the BPL Policy as exempting coverage for punitive damages in the Lenders

Liability Endorsement or otherwise identify First Interstate's coverage for punitive

damages as being inadequate.

**The Underlying Lawsuit: "The Kelly Logging Action"**

31.   Kelly Logging brought claims against First Interstate in a complaint filed in state district

court in Missoula, Montana ("Kelly Logging Action").

32.    Kelly Logging alleged that it had a longstanding banking relationship with First Interstate, dating back to 1984, and that it had an Operating Line of Credit and an equipment loan with First Interstate.  Kelly Logging alleges that Operating Line was extended several times.

33.    The Kelly Logging Complaint alleges that in 2009, First Interstate referred Kelly Logging to the Missoula Area Economic Development Corporation to inquire about the availability of stimulus funds through a state program known as the Montana Distressed Wood Products Industry Recovery and Stabilization Program ("WPIRS").  Kelly Logging applied for the funds.

34.    The Complaint in the  Kelly Logging Action alleges that, on August 13, 2009, two months before the First Interstate Line of Credit matured, the WPIRS loans were funded and a direct deposit was made into Kelly's checking account at First Interstate.  Kelly Logging alleges that on the same day, First Interstate allocated about $762,000 of the WPIRS loan proceeds out of Kelly's checking account to pay down the First Interstate line of credit.

35.    The Complaint in the Kelly Logging Action alleges that, because First Interstate allocated the loan proceeds to the line of credit and refused Kelly Logging's demands for a release of the loan collateral, First Interstate allegedly curtailed Kelly Logging's ability to utilize the WPIRS monies for their intended purpose and preventing it from utilizing years of accumulated equity in its equipment.

36.    According to the Complaint in the Kelly Logging Action, the alleged setoff  impaired Kelly Logging's ability to continue to secure financing and conduct business, causing

damages equal to the reasonably anticipated profit on future and present projects and its increased cost of business, damage to its business reputation, and lost interest on deposits.

37.    In the Kelly Logging Complaint, Kelly Logging brought four claims against First Interstate: Count I, breach of contract; Count Two, wrongful set-off; Count Three, breach of the covenant of good faith and fair dealing; and Count Four, injunctive relief.

38.    In its Complaint, Kelly Logging sought compensatory and punitive damages. The statutory requirements for punitive damages were specifically pled in Count Two (Wrongful Setoff) and Count Three (Breach of Implied Covenant).

39.    By special verdict on August 14, 2014, the jury in the Kelly Logging Action found that First Interstate breached the contract, committed wrongful setoff, and breached the implied covenant, causing damages. The jury awarded $286,550 in compensatory damages and $16,760,000 in punitive damages.

40.    In response to post-trial motions, the district court in the Kelly Logging action awarded attorney fees and costs to Kelly Logging in the amounts of $7,500,482.00 and $90,820.25. The district court entered final judgment, which included the amounts of $286,550.00; $16,760,000.00; $7,500,482.00; and $90,820.25.00.

41.    Kelly Logging filed and served Notice of Entry of Final Judgment on April 22, 2015. First Interstate intends to file an appeal in the Montana Supreme Court.

**First Interstate's Tender and Insurer's Acknowledgment of Coverage**

42.    Upon service of the Complaint in the Kelly Logging Action in November 2012, First Interstate notified Columbia Casualty of the lawsuit by providing Columbia Casualty a copy of the Complaint in the Kelly Logging Action.

-8-

43. On June 20, 2013, Columbia Casualty responded to First Interstate's tender by accepting coverage under the BPL Policy's Lender Liability Endorsement. ("Letter"). Columbia Casualty neither affirmed nor denied coverage under the primary part of the BPL policy or the other three parts of the insurance package provided to First Interstate.

44. In the Letter, Columbia Casualty acknowledged that Kelly Logging's claims constituted "Lending Act Claims" as defined by the Lender Liability Endorsement, and that the Kelly Logging Action triggered coverage under the policy's Lending Act Endorsement.

45. In the Letter, Columbia Casualty acknowledged coverage for the claims asserted by Kelly Logging, stating: "In sum, the Kelly Logging Action triggers coverage under the Policy, subject to **certain** reservation of rights set forth below."

46. The "**certain** reservation of rights set forth below" did not include any reservation with respect to punitive damages.

47. In the Letter, Columbia Casualty noted "several policy provisions which may limit or preclude coverage for this matter." Columbia Casualty specifically identified four specific policy provisions which may limit coverage, and identified what damages or claims would be limited by each policy provision.

48. First, Columbia Casualty reserved the right, pursuant to the definition of "Loss" in Section II and as amended by the Lender Liability Endorsement, to question coverage for "principle, interest or other moneys paid, accrued or due to the Insured Entity relating to or in connection with a Lending Act."

49. Second, Columbia Casualty reserved the right, pursuant to definition of "Loss," to deny coverage for disgorgement or restitution. Columbia Casualty explained that this

provision might preclude coverage for the allegations in the Kelly Logging Complaint in which Kelly Logging seeks return of funds through the line of credit.

50.     Third, Columbia Casualty reserved the right, pursuant to Section III, Exclusion 7 of the Policy, to question coverage for deliberate acts. Columbia Casualty explained that this provision might preclude coverage for damages from First Interstate's alleged "refus[al] to release the loan collateral," as pled in the Kelly Logging Complaint.

51.     Fourth, Columbia Casualty reserved the right, pursuant to Section III, Exclusion 13, as amended by the Lender Liability Endorsement, to deny coverage for breach of contract claims. Columbia Casualty explained that this provision might apply to preclude coverage for the allegations in the Kelly Logging Complaint for allegations regarding breach of the loan agreement.

52.     Columbia Casualty did not inform First Interstate of any reservations with respect to the claim for punitive damages contained in the Kelly Logging Complaint within the Lending Acts Claims of wrongful set off and bad faith, but instead, specifically accepted coverage of the claims subject only to the identified reservations.

53.     Columbia Casualty did not inform or notify First Interstate that the BPL Policy's definition of "Loss" in the primary part of that policy defined loss to exempt punitive damages, which definition differs in that respect from the other three definitions of "Loss" contained in First Interstate's insurance package.

54.     In the Letter, Columbia Casualty noted that its "position as to coverage for this matter is based solely on the allegations contained in the notice materials." The notice materials consisted of the Kelly Logging Complaint. The Complaint expressly pled claims for

punitive damages arising from the Lending Act Claims.

55. In the Letter, after reserving its rights with respect to "certain" policy provisions, Columbia Casualty added some "boilerplate" language and ended with a specific reservation of the right to "raise additional defenses to coverage that may come to light **as additional facts become known.**"

56. At all times during the Kelly Logging Action the "fact" that Kelly Logging asserted punitive damages claims arising out of the wrongful setoff and bad claims was known to Columbia Casualty.

57. Columbia Casualty received all pertinent pleadings from the time of the Complaint in the Kelly Logging Action until the verdict, including but not limited to settlement memoranda, summary judgment briefing, summary judgment orders, draft pretrial orders, the final pretrial order, and expert reports. Columbia Casualty never exercised its claimed right to "raise additional defenses to coverage that may come to light as additional facts become known."

58. The facts of the punitive damage claims asserted in Counts Two and Three of the Kelly Logging Complaint did not change during the course of the litigation. The allegations in the Final Pretrial Order are consistent with the claims as originally pled. The punitive damage claims presented to the jury are consistent with the punitive damage claims originally pled in the Kelly Logging Complaint.

**Columbia Casualty and The Kelly Logging Action**

59. First Interstate retained the law firm of Crowley Fleck PLLP to defend it in the Kelly Logging Action, with First Interstate paying defense costs which would be attributable to

the Policy's retention.

60.   Columbia Casualty sent a copy of the Letter to Crowley Fleck, informing First Interstate's
      legal counsel of Columbia Casualty's coverage position.

61.   Crowley Fleck, on behalf of First Interstate, relied upon the representations made in the
      Letter, and understood that Columbia Casualty accepted coverage for the tort claims up to
      $10,000,000, reserving only as to "certain" listed reservations for principle and interest,
      disgorgement, deliberate acts, and breach of contract claims.

62.   As requested by Columbia Casualty in the Letter, Crowley Fleck kept Columbia Casualty
      apprised of the developments in the Kelly Logging Action, including settlement
      discussions and pleadings.

63.   The state district court ordered mediation of the Kelly Logging case.  Mediation was held
      on September 6, 2013. Columbia Casualty failed to attend the mediation of the Kelly
      Logging case, and thereby failed to fulfill its duty to defend.

64.   Crowley Fleck, representing First Interstate, informed Columbia Casualty that Kelly
      Logging offered to settle the case at the mediation for a sum within the policy limits of
      $10,000,000.  Columbia Casualty did not respond to the demand or participate in the
      negotiations.

65.   Given the size of the demand, from (at least) this point forward, control over settlement
      decisions resided with Columbia Casualty, not First Interstate.  Columbia Casualty
      claimed its right over settlement from the outset.  In the Letter of June 2013, Columbia
      Casualty warned First Interstate "that the Insureds shall not admit or assume any liability,
      consent to any judgment, agree to any settlement or make any settlement offer without

Columbia Casualty's prior written consent."

66. Given the amount of the demand and its knowledge of the compensatory damage allegations in the Kelly Logging Action, Columbia Casualty knew that the settlement demand included a punitive damages component.

67. After receiving the demand which included a punitive damages component, Columbia Casualty failed to inform First Interstate that Columbia Casualty would dispute coverage for punitive damages under the policy, despite the punitive damages component of the demand.

68. Although Columbia Casualty was informed of the settlement offer, Columbia Casualty failed to settle the claim for the offer within policy limits, and in doing so, failed to protect its insured, First Interstate, from an excess judgment.

69. The state district court granted partial summary judgment to Kelly Logging by Order dated March 25, 2014. The state district court determined that the Bank had wrongfully "swept" funds from Kelly Logging's account, which the state district court held constituted a wrongful setoff. The state district court determined that First Interstate was liable as a matter of law for damages suffered by Kelly Logging as a result of wrongful setoff.

70. Crowley Fleck, representing First Interstate, timely informed Columbia Casualty that summary judgment had been issued on the tort of wrongful setoff. Columbia Casualty had already acknowledged that the claim of wrongful setoff as pled in the Complaint triggered coverage under the Lender Liability Endorsement based on Columbia Casualty's review of the Kelly Logging Complaint. (Letter). As pled in the Kelly

Logging Complaint, Count Two specifically pled wrongful setoff as including a claim for punitive damages.

71.   At the time of receipt of the summary judgment order, Columbia Casualty, and its attorney Johanna Fricano, knew that (1) Columbia Casualty had accepted coverage for the wrongful setoff claim as a Lending Liability Claim; (2) that Lending Liability claims include "any claim arising out of a Lending Act" under the Lender Liability Endorsement; (3) that Kelly Logging pled a punitive damage claim arising out of the wrongful setoff claim; (4) that the wrongful setoff claim would be presented to a jury with liability established; and (5) that the jury would determine whether to award punitive damages and in what amount.

72.   The order granting summary judgment on the wrongful setoff claim notified Columbia Casualty that the possibility of an award of punitive damages was now far more likely under the wrongful setoff claim as originally pled in Count Two of the Kelly Logging Complaint.

73.   Despite this information and notice, Columbia Casualty did not exercise its claimed "right to raise additional defenses that may come to light as additional facts become known.". At this time, Columbia Casualty still knew that Kelly Logging had asserted punitive damages claims, now knew that an award for those claims was a distinct possibility, but did not raise a policy defense regarding punitive damages under the BPL as amended by the Lender Liability Endorsement.  Columbia Casualty did not reserve its rights to deny coverage for punitive damages pursuant to the Definition of Loss, exemption 10, in the primary BPL part of the insurance package.

-14-

74. Crowley Fleck provided Columbia Casualty with all pertinent information regarding the Kelly Logging Action, including the experts' opinions and the draft Pretrial Order, and the Final Pretrial Order.  Crowley Fleck periodically discussed these developments with Columbia Casualty.

75. Columbia Casualty knew that Kelly Logging alleged punitive damages as part of Count Two (wrongful setoff) and Count Three (bad faith) from the outset of the lawsuit and at every juncture of the Kelly Logging Action.

76. After the district court granted summary judgment on the wrongful setoff claim, Crowley Fleck conferred with Johanna Fricano, attorney for Columbia Casualty, and specifically addressed Columbia Casualty's coverage for the claims against First Interstate.

77. At the time of this discussion on April 30, 2014, First Interstate had incurred defense costs of nearly $500,000, and was contemplating increasing its offer of judgment to $450,000.  Thus, Crowley Fleck contacted Ms. Fricano on April 30, 2014 to inform Columbia Casualty that the retention amount would soon be extinguished, rendering Columbia Casualty responsible for any additional amounts paid in defense, settlement, or judgment.

78. During the conference with Columbia Casualty's attorney on April 30, 2014, Crowley Fleck provided a detailed status update to Fricano, and conferred with her about increasing the Offer of Judgment to $450,000.  Crowley Fleck informed Fricano that this would essentially extinguish the retention amount and that all future payments in defense, settlement, or judgment would be Columbia Casualty's responsibility.

79. During the conference on April 30, 2014, Crowley Fleck specifically discussed the issue

-15-

of coverage with Fricano. Crowley Fleck advised Fricano that the June 2013 Letter from Columbia Casualty to First Interstate had accepted coverage for Lending Act Claims up to $10,000,000. Crowley Fleck informed Fricano that based on everything the law firm had been provided to date by Columbia Casualty, Crowley Fleck had advised the Bank that should the jury award damages, Columbia Casualty would provide coverage for the Kelly Logging Action, in a "worst case scenario," for tort claims up to $10 million, less the retention amount. Referencing the position stated in the June 2013 Letter. Crowley Fleck sought confirmation of that this was still Columbia Casualty's coverage position.

80.   During the conference on April 30, 2014, Fricano confirmed that First Interstate had coverage up to $10,000,000 for the lending act claims, and that Columbia Casualty was not now raising coverage defenses regarding the torts.

81.   Crowley Fleck indicated to Fricano that Crowley Fleck intended to rely upon her coverage representations and that Crowley Fleck would convey that coverage status to First Interstate, as the trial was approaching. During the April 30, 2014 conference, Crowley Fleck confirmed that the torts alleged against First Interstate were covered up to $10,000,000 in the case of a bad trial outcome, and that Columbia Casualty had no additional policy defenses to assert regarding those claims. Fricano did not inform Crowley Fleck that the $10,000,000 in "worst case scenario" coverage that she agreed existed, and to which Columbia Casualty was raising no policy defenses, did not include punitive damages.

82.   As it had in the past, after the April 30 conference with Columbia Casualty's attorney Fricano, Crowley Fleck communicated to First Interstate that it had kept Columbia

-16-

Casualty advised of the developments, and that Columbia Casualty would not dispute coverage up to the amount of $10,000,000 should there be a bad trial outcome.

83.    Crowley Fleck provided Fricano with the expert Gibbs's opinion prior to the conference concerning coverage on April 30, and referenced the expert disclosure during the conversation.  As Kelly Logging's damage expert, Gibbs opined maximum compensatory damages of approximately $5.6 million.

84.    On April 30, 2014, when Fricano confirmed that Columbia Casualty would not assert additional policy defenses regarding the torts, and that the policy provided coverage up to $10,000,000, Fricano and Columbia Casualty knew (1) that Columbia Casualty had accepted coverage for the wrongful setoff Claim as a Lending Liability Claim; (2) that Lending Liability claims include "any claim arising out of a Lending Act" under the Lender Liability Endorsement; (3) that Kelly Logging pled a punitive damage claim as part of the wrongful setoff claim; (4) that the wrongful setoff claim would be presented to a jury with liability established through summary judgment; (5) that the jury would determine whether to award punitive damages and in what amount; (6) that First Interstate and its attorneys relied upon the Letter's reservation upon only "certain" policy provisions; (7) that Crowley Fleck had advised First Interstate that the torts would be covered up to $10,000,000 in the case of a bad trial outcome; and (8) that any large award, particularly any award over $5.6 million contained a punitive damage component, as Kelly Logging's expert had opined maximum compensatory damages at just under that amount.

85.    During the conference between Crowley Fleck and Fricano on April 30, 2014, Crowley

-17-

Fleck specifically requested confirmation of Columbia Casualty's coverage position regarding the claims asserted by Kelly Logging.

86. In response to this request, Columbia Casualty did not exercise its claimed "right to raise additional defenses that may come to light as additional facts become known." Columbia Casualty did not raise a policy defense regarding punitive damages under the BPL as amended by the Lender Liability Endorsement. Instead, Columbia Casualty affirmatively confirmed its original policy position, accepting coverage for the Lending Act Claims in Counts Two and Three, and confirming coverage up to $10,000,000, without limitation as to whether those damages were compensatory or punitive.

87. On behalf of First Interstate, Crowley Fleck relied upon the representations of Columbia Casualty's attorney, Johanna Fricano, and informed First Interstate that the Lender Liability Endorsement provided coverage in the case of a bad trial outcome, up to $10 million.

88. After Fricano confirmed acceptance of coverage of the Lending Act claims and denied the existence of any coverage issues regarding those claims during the April 30, 2014 conference, Columbia Casualty never raised additional policy defenses or questioned the coverage for the tort claims, including punitive damages, or the contract claims.

89. Columbia Casualty did not raise a policy defense regarding punitive damages under the BPL Policy's Definition of Loss, exemption 10. Instead, Columbia Casualty continued to accept coverage for the Lending Act Claims in Counts Two and Three, and confirmed coverage up to $10,000,000, which amount included a punitive damages component.

90. In addition to confirming coverage up to $10,000,000 for the Lending Act claims

-18-

asserted by Kelly Logging, at no time in multiple conversations with Columbia Casualty did Columbia Casualty inform Crowley Fleck that Columbia Casualty would question coverage for punitive damages under the Lender Liability Endorsement or the BPL Policy.

91. Crowley Fleck provided Columbia Casualty with a copy of the signed Final Pretrial Order on May 23, 2014.

92. The Pretrial Order notified Columbia Casualty that Kelly Logging still intended to submit a claim of punitive damages to the jury as a claim arising from the wrongful setoff and bad faith claims; and that a request for attorney fees would follow the trial.

93. Upon receipt of the Final Pretrial Order in May, 2014, Columbia Casualty knew (1) that Columbia Casualty had accepted coverage for the wrongful setoff Claim as a Lending Liability Claim; (2) that Lending Liability claims include "any claim arising out of a Lending Act" under the Lender Liability Endorsement; (3) that Kelly Logging pled a punitive damage claim as part of the wrongful setoff claim; (4) that the wrongful setoff claim would be presented to a jury with liability established; (5) that the jury would determine whether to award punitive damages and in what amount; (6) that the jury would likely be instructed that "The Court has determined that the Bank is liable as a matter of law for compensatory and consequential tort damages suffered by Kelly Logging as a result of not having access to or use of the line of credit;" (7) that First Interstate and its attorneys relied upon the June 2013 Letter's reservation upon only "certain" policy provisions; (8) that Crowley Fleck had advised First Interstate that the torts would be covered up to $10,000,000 in the case of a bad trial outcome; (9) that (at

-19-

least) any award over $5.6 million would contain a punitive damage component, and (10) that the case was likely going to jury trial.

94.     The Final Pretrial Order notified Columbia Casualty that the possibility of an award of punitive damages under the claim as originally pled was far more likely.

95.     Despite this information and notice, Columbia Casualty did not exercise its claimed "right to raise additional defenses that may come to light as additional facts become known." Columbia Casualty did not raise a policy defense regarding punitive damages under the BPL as amended by the Lender Liability Endorsement and did not provide notice to First Interstate of any restrictions on coverage for punitive damages under the Columbia Casualty insurance package.

96.     Throughout the litigation, upon receiving additional information from Crowley Fleck regarding the proceedings, Columbia Casualty did not update, revise, or amend its reservation of rights provided to First Interstate on June 20, 2013.

97.     Columbia Casualty never informed First Interstate that Columbia Casualty questioned coverage for punitive damages until after the jury verdict.

98.     From the time of Columbia Casualty's Letter accepting coverage for the Kelly Logging Action in June 2013 through the trial, First Interstate reasonably and justifiably believed that no coverage issues existed with respect to the "worst case scenario" verdict, and that the Policy provided coverage up to $10,000,000 for compensatory and punitive damages arising from a Lending Act Claim.

99.     From the time of Columbia Casualty's Letter accepting coverage subject to certain specific reservations in June 2013 through trial, First Interstate's defense counsel,

-20-

Crowley Fleck, believed that no coverage issues existed with respect to a large verdict of compensatory and punitive damages arising from a Lending Act Claim. That belief was based on (1) receipt of the Letter at the outset of the litigation; (2) the affirmative representations made by Columbia Casualty and/or Fricano accepting coverage for the torts without stating a reservation for punitive damages, and (3) the failure of Columbia Casualty to ever assert a policy defense as to punitive damages.

100.   Throughout the Kelly Logging Action, First Interstate reasonably and justifiably believed that the Lender Liability Coverage provided coverage for "any claim" arising from a lending act, including compensatory and punitive claims, up to $10,000,000 with a $1,000,000 retention for Lending Acts.

101.   The Kelly Logging Action was tried to a jury in August 2014. The jury was presented with three of the four claims initially pled in the Kelly Logging Complaint: breach of contract, wrongful setoff; and breach of the covenant of good faith and fair dealing.

102.   Two of the claims presented to the jury (wrongful setoff and breach of the covenant) included claims for punitive damages, just as the claims had initially been pled to include punitive damages.

103.   By special verdict on August 14, 2014, the jury in the Kelly Logging Action found that First Interstate breached the contract, committed wrongful setoff, and breached the implied covenant, causing damages. The jury awarded $286,550 in compensatory damages and $16,760,000 in punitive damages.

104.   After receipt of the verdict, Columbia Casualty reneged on its promise to provide coverage for the torts up to $10,000,000. Columbia Casualty reneged orally, without

providing a written response to the tender of the jury verdict.

105.    On January 30, 2015, Columbia Casualty for the first time purported to reserve its rights to question coverage for punitive damages, claiming that the definition of "Loss" in the BPL Policy excludes punitive damages for the Lending Act claim which resulted in punitive damages. That correspondence constitutes the first written denial of coverage for the punitive damage verdict in the Kelly Logging Action.  At the same time, Columbia Casualty conceded it was bound to pay for compensatory damages.

106.    By letter dated January 30, 2015, Columbia Casualty also wrongfully denied coverage for the appeal bond.

107.    Upon receipt of the district court's final judgment in the Kelly Logging Lawsuit, First Interstate tendered the judgment to Columbia Casualty requesting confirmation of coverage, including for the large attorney fee award which the district court held was a compensatory damage award.

108.    In a response dated April 30, 2015, Columbia Casualty for the first time asserted a denial for all coverage for the Kelly Logging verdict, including the compensatory award, the fee and cost compensatory award, and the punitive damage award contained in the judgment, thereby raising additional defenses to coverage not raised in its initial acceptance of coverage, and contradicting its promise in January 2015 to pay for compensatory damages.

**COUNT I:    DECLARATORY RELIEF (against CNA and Columbia Casualty).**

109.    First Interstate re-asserts and re-alleges all contentions and allegations contained in the preceding paragraphs.

-22-

110.   The Policy, as amended by the Lender Liability Endorsement, provides coverage for Kelly Logging's claims of wrongful setoff and tortious breach of the implied covenant of good faith and fair dealing.

111.   First Interstate asserts that the Columbia Casualty insurance package provides coverage for the compensatory and punitive damages awarded by the jury in the Kelly Logging Action, as set forth in Counts II, III, IV, and V of this Complaint.

112.   Columbia Casualty disputes that the insurance package extends coverage to the punitive award and the appeal bond.

113.   After the final judgment, Columbia Casualty disputes coverage for compensatory damages  for the first time, and in direct contradiction to previous acknowledgments of a duty to indemnify First Interstate for compensatory awards.  Columbia Casualty disputes coverage for attorney fees and costs, which the district court defined as compensatory.

114.   An actual controversy exists between First Interstate and Columbia Casualty in that Columbia Casualty as to coverage available for the Kelly Logging Action under the insurance package provided by Columbia Casualty to First Interstate.

115.   By reason of the foregoing, a declaratory judgment is both necessary and proper on Counts II, III, IV and V of this Complaint in order to set forth and determine the rights, obligations and liabilities which exist under the Policy.

**COUNT II:   BREACH OF CONTRACT  (against CNA and Columbia Casualty).**

116.   First Interstate re-asserts and re-alleges all contentions and allegations contained in the preceding paragraphs.

117.   Kelly Logging's claims in the Complaint and the eventual award of damages in the

judgment constitute Lending Act Claims under the Lender Liability Endorsement to the Policy.

118.   The Lender Liability Endorsement amends and expands the coverage provided by the BPL Policy.

119.   For premium paid, the Lender Liability Endorsement adds to the BPL Policy's coverage for Wrongful Acts arising out of Lending Acts.  Such claims often and typically include claims for exemplary and punitive damages.

120.   The Lender Liability Endorsement adds coverage for Lender Act Claims by amending the definitions of the BPL policy.  First, the Endorsement amends the definition of "loss" by exempting coverage for principle and interest; second, the Endorsement expands the coverage of the BPL by amending the Definitions, including "loss," by adding Lending Act and Lending Act Claims to the definitions provided in the BPL policy.

121.   In adding "Lending Act Claims" to the Definitions in the BPL Policy, the Lender Liability Endorsement expands coverage to include, by amended definition, **"any claim arising from a Lending Act,"** including a claim for punitive damages.

122.   While specifically adding Lending Act Claims to the Definitions in the BPL Policy, the Endorsement does not preclude recovery for claims of punitive damages.  No exclusion or exemption for punitive damages is included in the Endorsement.  None of the definitions added to amend the BPL Policy's definitions in the Endorsement except or exclude punitive damages.

123.   Kelly Logging's punitive damage claims arise out of Lending Act claims of wrongful setoff and breach of the covenant.

-24-

124.    The Lending Act Claims asserted by Kelly Logging in Counts Two and Three of the Kelly Logging Complaint specifically include claims for compensatory and punitive damages, and the jury awarded compensatory and punitive damages on those two claims.

125.    The Columbia Casualty policy does not exclude or exempt coverage for compensatory damages, including compensatory damages in the form of attorney fees and costs.

126.    From the outset of the Kelly Logging Action, by letter dated June 20, 2013, Columbia Casualty acknowledged that "the Kelly Logging Action triggers coverage under the Policy, subject to certain reservation of rights set forth below." Those certain reservations did not include any reservation with respect to the specific claim in the Complaint for punitive damages or the part of the BPL policy definition of "Loss" which purports to exempt punitive damages, or for compensatory damages in the form of an attorney fees and costs award..

127.    From the outset of the Kelly Logging Action, by letter dated June 20, 2013, Columbia Casualty reserved the right "to raise additional defenses to coverage which may come to light as additional facts become known." Columbia Casualty never raised additional defenses during the pendency of the litigation, despite receiving extensive information from First Interstate's counsel regarding the status of the litigation and never addressed coverage under the other parts of the insurance package.

128.    Columbia Casualty breached the insurance contract by reneging on its acknowledgment of coverage as stated in the Letter and confirmed throughout the Kelly Logging Action.

129.    Columbia Casualty breached the insurance contract by denying coverage for punitive damages and the appeal bond.

-25-

130. Columbia Casualty breached the insurance contract by denying coverage for the compensatory damages award (including attorney fees and costs components of that award) after the entry of final judgment, despite confirmation of coverage for compensatory damages in January 2015.

131. Columbia Casualty relies upon the definition of "loss" contained in the BPL Policy in an attempt to exclude coverage after the verdict for punitive damages. This exception to a definition must be narrowly and strictly construed against disclaiming coverage because such provisions are contrary to the fundamental protective purpose of an insurance policy.

132. After acknowledging a duty to indemnify First Interstate for compensatory damages, Columbia Casualty now relies on various policy provisions to deny coverage for compensatory damages, including attorney fees and costs awarded as part of compensatory damages. All exclusions in the policy must be narrowly and strictly construed against Columbia Casualty.

133. Any ambiguity in the policy must be construed in a light most favorable to First Interstate, particularly if an ambiguous provision attempts to preclude Columbia Casualty's liability.

134. The BPL Policy as amended by the Lender Liability Endorsement may be reasonably susceptible to two meanings with respect to coverage for punitive damages.

135. Columbia Casualty's interpretation of the insurance package renders the coverage obtained by First Interstate illusory. The Endorsement adds coverage to the BPL Policy for "any claim" arising from a Lending Act. Lending act claims, by their nature, include claims for punitive damages. Moreover, few claims would require $10,000,000 in

coverage absent a punitive or exemplary component, yet First Interstate paid premiums for $10,000,000 in Lender Liability coverage.

136. The term "loss" is defined in many different ways throughout the insurance package provided to First Interstate, and punitive damage coverage appears to exist throughout the package for a wide variety of claims, including punitive damage claims. Columbia Casualty never denied coverage under those parts of the insurance package or distinguished those grants of coverage for punitive damages from the Endorsement's coverage for "all claims" arising from Lending Liability Claims.

137. The Lender Liability Endorsement amends and adds to the coverage provided by the BPL Policy by adding coverage for Lending Act Claims, meaning "any claim arising out of a Lending Act." Neither the BPL Policy nor the Lending Act Endorsement defines the term "any claim arising out of" or limits the application of the phrase.

138. All external evidence supports First Interstate's interpretation of the Lender Liability Endorsement as providing coverage for punitive damages. Columbia Casualty only reserved its rights with respect to "certain" policy provisions, and Columbia Casualty never reserved its rights with respect to the subpart 10 of the Definition of "Loss" in the BPL, which it now purports to exempt punitive damages from the definition.

139. As additional external evidence supporting First Interstate's interpretation of the policy, Columbia Casualty represented that it would raise additional policy defense upon receipt of information triggering the defenses. At no time during the litigation did Columbia Casualty question or deny the availability of coverage for punitive damages under the Lender Liability Endorsement, although Columbia Casualty received full information

regarding Kelly Logging's allegations and the court's rulings in the underlying case.

140.  As additional external evidence supporting First Interstate's interpretation of the policy, on April 30, 2014, upon inquiry from Crowley Fleck about coverage, Columbia Casualty confirmed that First Interstate had coverage up to $10,000,000 for the lending act claims – the torts alleged by Kelly Logging.  Columbia Casualty informed Crowley Fleck that Columbia Casualty would not assert additional policy defenses to the torts.

141.  Additional external evidence supporting First Interstate's interpretation of the policy includes the actions of BancServe, Ms. Ruth, and/or AH&T in not identifying a possible lack of punitive damage coverage for lender liability cases when they selected and/or reviewed the Columbia Casualty insurance package.

142.  In disputing coverage for the punitive damage award and for compensatory damage award (including fees and costs), Columbia Casualty breaches it duty to indemnify First Interstate under the contract of insurance.

143.  In failing to attend the mediation and participate in settlement negotiations, Columbia Casualty breached its duty to defend First Interstate and subjected First Interstate to a large, uncovered excess verdict without providing any notice whatsoever that could occur.

144.  In refusing to participate in payment for the supersedeas/appeal bond, Columbia Casualty breached its duty to defend and indemnify First Interstate.

145.  In reserving the right to deny coverage for punitive damages, Columbia Casualty committed anticipatory breach of contract.

146.  Columbia Casualty's breach of the contract's indemnity and defense duties have caused

damages to First Interstate, including loss of the policy proceeds, loss of opportunity, costs of the appeal bond, and losses in excess of the policy retention and the limits of the policy.

147.    First Interstate is entitled to damages, including the policy proceeds, the total amount of the judgment or settlement, the bond amounts, and attorneys fees.

**COUNT III:   BREACH OF CONTRACT - ESTOPPEL  (against CNA and Columbia Casualty).**

148.    First Interstate re-asserts and re-alleges all contentions and allegations contained in the preceding paragraphs.

149.    From the outset of the Kelly Logging Action, Columbia Casualty acknowledged that Kelly Logging's claims constituted Lending Liability Claims which triggered coverage under the Lender Liability Endorsement.

150.    By conduct, acts, and written representations, Columbia Casualty represented that the Policy provided up to $10,000,000 in coverage for "any claim" arising from a Lender Liability claim, including the wrongful setoff and bad faith claims asserted in Counts Two and Three of the Kelly Logging Action, which gave rise to punitive damages.

151.    By conduct, acts, and written representations, Columbia Casualty accepted coverage for the Lending Act claims contained in the Kelly Logging Complaint.  Those claims specifically included punitive damage claims arising from the torts, and attorney.

152.    By letter dated June 20, 2013, Columbia Casualty acknowledged that "the Kelly Logging Action triggers coverage under the Policy, subject to certain reservation of rights set forth below."  Those certain reservations did not include any reservation with respect to the specific claim in the Complaint for punitive damages.

-29-

153. By letter dated June 20, 2013, Columbia Casualty reserved the right "to raise additional defenses to coverage which may come to light as additional facts become known." Columbia Casualty never raised additional defenses during the pendency of the litigation, despite receiving extensive information from First Interstate's counsel regarding the status of the litigation.

154. By its actions regarding the mediation and offer of settlement, and by conditions stated in the June 2013 Letter, Columbia Casualty assumed control of settlement decisions in the Kelly Logging Action.

155. On April 30, 2014, Columbia Casualty, through its attorney Johanna Fricano, represented that Columbia Casualty was raising no additional policy defenses, and that First Interstate had coverage for the wrongful setoff and bad faith claims up to $10,000,000.

156. Crowley Fleck informed Fricano of the reason for the coverage inquiry on April 30, and the intent to rely upon the information supplied by Fricano.

157. Representing First Interstate, Crowley Fleck did rely upon Fricano's confirmation of coverage up to $10 million for the claims, and her representation that Columbia Casualty was not asserting any policy defenses in addition to those stated at the outset of the litigation. Crowley Fleck made decisions regarding the litigation based on these representations and the confirmation of coverage.

158. Crowley Fleck reported to First Interstate that Columbia Casualty was not questioning coverage up to $10,000,000, in reliance upon Fricano's coverage update of April 30, 2014.

159. Columbia Casualty knew of the true facts of its policy position at the time it reserved its

-30-

rights in June 2013.

160.   Columbia Casualty knew it had required its prior written consent of any settlement negotiation made by First Interstate in its Letter of June 2013.  Columbia Casualty knew it had assumed control of settlement by its decision to not attend the September 2013 mediation, to not address or accept the settlement offer made by Kelly Logging at the mediation, and to never make a never make a settlement offer to protect its insured from an excess judgment.

161.   Columbia Casualty knew the true facts of its policy position on April 30, 2014, when Columbia Casualty confirmed coverage for the torts up to $10,000,000 and without any reservations for punitive damages.

162.   First Interstate Bank reasonably believed that Columbia Casualty would provide coverage for Lending Act Claims up to $10,000,000 after use of the $1,000,000 retention, without limitation as to punitive damages arising out of the Lending Act Claims.

163.   Columbia Casualty intended First Interstate to rely upon its specific and limited reservation of rights as set forth on June 20, 2013 and never amended or revised that reservation. Columbia Casualty intended First Interstate to rely upon the confirmation of coverage without any reservation as to punitive damages on April 30, 2014, and never amended or revised that confirmation until after the verdict.

164.   First Interstate naturally and reasonably relied upon the coverage position set forth by Columbia Casualty in its formal acceptance of coverage subject to specific reservations, and relied on the statements made by Columbia Casualty's attorney, Fricano, throughout the litigation and on April 30, 2014.

165.   First Interstate's defense counsel relied upon Columbia Casualty's representations and omissions, and formed the belief that coverage was available for punitive damages under the Lender Liability endorsement.

166.   First Interstate relied to its detriment upon Columbia Casualty's representations acknowledging coverage for the Kelly Logging torts without reservation for punitive damages. First Interstate made settlement and litigation decisions based on the belief that Columbia Casualty's policy provided coverage for all claims arising out of the Lending Act Claims, including the request for punitive damages, up to $10,000,000.

167.   After confirming in April Columbia Casualty's coverage for the lending act claims up to $10,000,000, First Interstate increased its offer of judgment to $450,000, effectively pledging the remainder of its $1,000,000 retention to the lawsuit. It took this action in reliance upon Fricano's affirmation of $10,000,000 in coverage with no exception for punitive awards.

168.   Had Fricano and/or Columbia Casualty told First Interstate that Columbia Casualty questioned coverage for punitive damages in April, First Interstate would have demanded that its insurer settle the claim within policy limits, including but not limited to accepting the settlement offer made by Kelly Logging at the mediation.

169.   Had Fricano and/or Columbia Casualty told First Interstate that Columbia Casualty questioned coverage for punitive damages in April, First Interstate would have taken all steps to protect itself from a judgment in excess of its retention and in excess of the policy limits.

170.   First Interstate changed its position for the worse based on Columbia Casualty's

representations regarding coverage.  In reliance upon Columbia Casualty's representations regarding coverage under the Lender Liability endorsement, First Interstate acted upon the belief that even the "worst case scenario" presented by defense counsel would be covered by the Columbia Casualty policy.  First Interstate pursued its defense of the claim through jury verdict in reliance on Columbia Casualty's misrepresentations that the Lender Liability endorsement provided coverage for "wrongful acts" up to $10,000,000, with no limitations for punitive damages ever stated by Columbia Casualty.

171.    First Interstate's reliance was reasonable.  First Interstate's previous policy, through BancInsure, provided coverage for punitive damages for bankers' liability.  Moreover, the package of insurance procured by First Interstate from Columbia Casualty specifically provides coverage for punitive damages in numerous parts of the coverage.  In addition, coverage is widely available for punitive damages in the market, and after the verdict, Columbia Casualty agreed to write such insurance for First Interstate.

172.    Columbia Casualty breached the contract by denying coverage for punitive damages and the appeal bond, and by denying coverage for all compensatory damages and attorney fees after the entry of judgment in April 2015.  Columbia Casualty is estopped from denying coverage for compensatory damages (including attorney fees) and punitive damages for the Lending Act Claims under the Lender Liability Endorsement.

173.    First Interstate suffered damages as a result of its reliance on Columbia Casualty's position.

**COUNT IV:   BREACH OF CONTRACT - WAIVER  (against CNA and Columbia Casualty).**

174. First Interstate re-asserts and re-alleges all contentions and allegations contained in the preceding paragraphs.

175. Under Montana law, Columbia Casualty had a duty to affirm or deny coverage for Kelly Logging's claim of punitive damage within a reasonable time after notice of the claim. § 33-18-201(5), MCA.

176. First Interstate notified Columbia Casualty of the Kelly Logging claim, including the claim for punitive damages, shortly after service of the Kelly Logging Complaint in November 2012.

177. In the response to First Interstate's tender of the Kelly Logging Action, Columbia Casualty acknowledged that Kelly Logging's claims constituted "Lending Act Claims" as defined by the Lender Liability Endorsement, and that the Kelly Logging Action triggered coverage under the policy's Lending Act Endorsement.

178. In the Letter, Columbia Casualty accepted coverage for the Lending Act Claims, stating: "In sum, the Kelly Logging Action triggers coverage under the Policy, subject to **certain** reservation of rights set forth below."

179. The "**certain** reservation of rights set forth below" did not include any reservation with respect to punitive damages.

180. In the Letter, Columbia Casualty stated that it reserved the "right to raise additional defenses to coverage that may come to light as additional facts become known." The fact of the claim for punitive damages was known at the time of the Letter, and no new facts ever became known

181. Crowley Fleck kept Columbia Casualty apprised of all litigation developments, including

-34-

specific settlement demands, summary judgment rulings, other pretrial rulings, and the

pretrial order.  Despite receiving full and accurate information concerning all aspects of

the litigation, Columbia Casualty never exercised its declared "right to raise additional

defenses to coverage that may come to light as additional facts become known."

182.   In March 2014, the state district court granted summary judgment to Kelly Logging on

the claim of wrongful setoff.  Columbia Casualty knew from the Complaint, the draft

pretrial order, and the other materials provided by First Interstate throughout the litigation

that the wrongful setoff claim included a claim for punitive damages.

183.   On April 30, 2014, Crowley Fleck specifically discussed the issue of coverage with

Fricano. In that conference, Columbia Casualty's attorney, Johanna Fricano, confirmed

that First Interstate had coverage up to $10,000,000 for the lending act claims, and that

Columbia Casualty was not raising any additional issues regarding coverage for the torts.

Fricano did not except punitive damages from this confirmation.

184.   During the April 30, 2014 conference, Crowley Fleck confirmed that Columbia Casualty

was not altering the "certain" reservations contained in the Letter dated June 20, 2013;

and that the Lending Act claims alleged against First Interstate were covered up to

$10,000,000 in the case of a bad trial outcome; and that Columbia Casualty had no

additional policy defenses to assert regarding those claims.

185.   From June 2013 until after the verdict in the Kelly Logging Action on August 14, 2014,

Columbia Casualty failed to inform First Interstate that Columbia Casualty would

question coverage of the punitive damage claim.

186.   When specifically asked its coverage position as trial approached, Columbia Casualty

-35-

knowingly declined to assert any policy defenses regarding punitive damages with respect to Kelly Logging's claims. Columbia Casualty's attorney confirmed to First Interstate's attorney that the insurer was not asserting additional policy defenses and that First Interstate had coverage for the Lending Act Claims up to $10,000,000.

187.    At the time Columbia Casualty confirmed coverage for the torts without any reservation for punitive damages on April 30, 2014, Fricano and Columbia Casualty knew (1) that Columbia Casualty had accepted coverage for the wrongful setoff claim as a Lending Liability Claim; (2) that Lending Liability claims include "any claim arising out of a Lending Act" under the Lender Liability Endorsement; (3) that Kelly Logging pled a punitive damage claim as part of the wrongful setoff claim; (4) that the wrongful setoff claim would be presented to a jury with liability established; (5) that the jury would determine whether to award punitive damages and in what amount; (6) that First Interstate and its attorneys relied upon the Letter's reservation upon only "certain" policy provisions; (7) that Crowley Fleck had advised First Interstate that the torts would be covered up to "worst case scenario" of $10,000,000 in the case of a bad trial outcome; and (8) that any large award, particularly any award over $5.6 million, contained a punitive damage component, as Kelly Logging's expert had opined maximum compensatory damages at just under $5.6 million.

188.    Columbia Casualty unequivocally manifested its waiver of any policy defenses to the punitive damage claim by letter dated June 2013. In that letter, Columbia Casualty cited specific reservations as to specific policy provisions and claims. Columbia Casualty did not reserve its rights to dispute coverage for punitive damages. Columbia Casualty

reserved the right to raise additional defenses in the future, based on new information. Columbia Casualty never exercised that claimed right.

189.   Columbia Casualty waived any policy defenses to punitive damages in April 2014, when in response to a specific inquiry about coverage, Columbia Casualty informed First Interstate's counsel that Columbia Casualty was not raising additional policy defenses and that First Interstate had coverage up to $10,000,000 for the lending act claims.

190.   Columbia Casualty also manifested its waiver of any policy defenses to the punitive damage by its course of conduct, and its continued failure to question or deny coverage for punitive damages for over a year during the Kelly Logging Action.

191.   In January of 2015, Columbia Casualty manifested its waiver of any policy defenses regarding compensatory damages, when Columbia Casualty acknowledged it owed indemnification for compensatory damages in the Kelly Logging Action.

192.   First Interstate relied upon Columbia Casualty's acknowledgment of coverage for Lender Liability Claims such as wrongful setoff in June 2013.  First Interstate relied upon Columbia Casualty's confirmation of coverage up to $10,000,000 in April 2014.  First Interstate relied upon Columbia Casualty's failure to reserve its rights with respect to compensatory and/or punitive damages at any time during the Kelly Logging Action.

193.   First Interstate suffered damages as a result of its reliance on Columbia Casualty's waiver of any policy defenses to the punitive damage and compensatory damage claims, including loss of opportunity to settle, loss of opportunity to seek resolution of the coverage before trial of the underlying action, and losses above the retention amount of $1,000,000, awarded by the jury at trial.

194. Columbia Casualty breached the contract by denying coverage for punitive damages after the verdict, by denying coverage for compensatory and punitive damages after the final judgment, by denying coverage for the entire appeal bond, and has waived the right to rely upon policy defenses not identified upon tender of the claim, upon receipt of new information, and upon specific inquiries regarding coverage by First Interstate's counsel.

**COUNT V: BREACH OF CONTRACT - THE REASONABLE EXPECTATIONS DOCTRINE (against CNA and Columbia Casualty).**

195. First Interstate re-asserts and re-alleges all contentions and allegations contained in the preceding paragraphs.

196. The reasonable expectations doctrine requires Columbia Casualty to provide coverage for punitive damages and compensatory damages (including the fees and costs components thereof), and that Columbia Casualty breaches the contract by denying coverage for punitive and compensatory damages.

197. Prior to procuring the Columbia Casualty insurance package in 2011, First Interstate was insured by BancInsure. That policy contained the same types of coverages later provided by Columbia Casualty, and all the sections of the BancInsure policy included coverage for punitive damages.

198. In 2011, First Interstate procured an insurance package from Columbia Casualty to replace the coverages supplied by the BancInsure policy. The package included four parts, three of which expressly include punitive damages in the definition of "loss."

199. The BPL Policy contains the insurance package's only definition of "loss" which attempts to exempt punitive damages. However, the BPL Policy Definitions are amended by the Lender Liability Endorsement.

-38-

200. The Lender Liability Endorsement amends and expands the coverage provided by the BPL policy.

201. For premium paid, the Lender Liability Endorsement adds to the BPL Policy's coverage for Wrongful Acts arising out of Lending Acts. Such claims often and typically include claims for exemplary and punitive damages, and in the normal course of events, a value of $10,000,000 for a claim would never be reached without a punitive damages component.

202. The Lender Liability Endorsement adds coverage for Lender Act Claims by amending the definitions of the BPL policy. First the Endorsement amends the definition of "loss" by exempting coverage for principle and interest; then Endorsement expands the coverage of the BPL by amending the Definitions, including "loss," by adding Lending Act and Lending Act Claims to the definitions provided in the BPL policy.

203. In adding "Lending Act Claims" to the Definitions in the BPL Policy, the Lender Liability Endorsement expands coverage to include, by amended definitions, "any claim arising from a Lending Act," including a claim for punitive damages.

204. The Lender Liability Endorsement does not preclude recovery for claims of punitive damages. No exclusion for punitive damages is included in the Endorsement. None of the definitions added to amend the BPL Policy's definitions in the Endorsement except or exclude coverage for a claim for punitive damages.

205. Nothing in the Endorsement or policy precludes recovery for compensatory damage awards including any attorney fees and costs components of such an award.

206. Kelly Logging's punitive damage claims arise out of Lending Act claims of wrongful

setoff and breach of the covenant. The final judgment awards compensatory and punitive damages on the Lending Act claims asserted by Kelly Logging, including attorney fees as a component of compensatory damages.

207. Columbia Casualty acknowledged from the outset of the litigation that the claims asserted by Kelly Logging are "Lending Act Claims" which fall within the coverage of the Lending Liability Endorsement.

208. Columbia Casualty relied upon the definition of "loss" contained in the BPL Policy in an attempt to exclude coverage after the verdict for punitive damages. Any exceptions or exclusions to coverage must be narrowly and strictly construed against disclaiming coverage because such provisions are contrary to the fundamental protective purpose of an insurance policy.

209. First Interstate relies upon an Endorsement which adds coverage by amending the Definitions of the BPL policy, including "loss," to include "any claim arising from a lending act."

210. Columbia Casualty's interpretation of the term "loss" as stated in the primary BPL policy renders the Lender Liability coverage obtained by First Interstate illusory. The Endorsement adds coverage to the BPL for "any claim" arising from a Lending Act. Lending act claims, by their nature, include claims for punitive damages. Moreover, few Lending Act claims would require $10,000,000 in coverage absent a punitive or exemplary component.

211. All external evidence supports First Interstate's reasonable expectation of coverage for punitive and compensatory damages under the Lender Liability Endorsement. The

insurance package provided to First Interstate by Columbia Casualty specifically includes punitive damage coverage in numerous parts.  Columbia Casualty never denied coverage under those parts or distinguished those grants of coverage for punitive or compensatory damages from the Endorsement's coverage for "all claims" arising from Lending Liability Claims.

212.   As additional external evidence supporting First Interstate's reasonable expectation of coverage for punitive and compensatory damages under the Lender Liability Endorsement, Columbia Casualty did not reserve its rights with respect to the definition of "Loss" in the BPL Policy as a reason to question coverage for punitive or compensatory damages under the Lender Liability Endorsement.

213.   As additional external evidence supporting First Interstate's reasonable expectation of coverage for punitive damages under the Lender Liability Endorsement, on April 30, 2014, upon inquiry from Crowley Fleck about coverage, Columbia Casualty confirmed that First Interstate had coverage up to $10,000,000 for the lending act claims and indicated that it was raising no additional defenses regarding the torts.

214.   As additional external evidence supporting First Interstate's reasonable expectation of coverage for punitive damages under the Lending Liability Endorsement, Columbia Casualty represented that it would raise additional policy defense upon receipt of information triggering the defenses.  At no time during the litigation did Columbia Casualty question or deny the availability of coverage for punitive damages under the Lender Liability Endorsement, although Columbia Casualty received full information regarding Kelly Logging's allegations and the court's rulings in the underlying case.

-41-

215.   First Interstate had a reasonable expectation of coverage for attorney fees. From the outset of the claim, by letter dated June 20, 2013, Columbia Casualty acknowledged in writing that its Insurance Package provided coverage for the Lending Act Claims. Columbia Casualty never reserved its rights to dispute coverage for attorneys fees. By letter dated January 30, 2015, Columbia Casualty "acknowledge[d] that its indemnification obligations are triggered for the compensatory damages award." Columbia Casualty indicated that it would honor its indemnity obligations with respect to the compensatory damages upon notice that the retention was satisfied and the award is required to be paid.

216.   On April 21, 2015, the district court awarded attorney fees of $7,500,482 and costs of $90,820.25. The district court held that the attorney fees and costs constitute compensatory damages. Despite having acknowledged coverage for compensatory awards, on April 30, 2015, Columbia Casualty denied coverage for compensatory damages, including but not limited to the fees and costs.

217.   By express terms and based on the reasonable expectations of the insured, the Lender Liability Endorsement does not exempt, exclude or preclude coverage for punitive damages for Lending Act Claims, and does not preclude coverage for compensatory damages, including but not limited to costs and fees.

**COUNT VI:  CONSTRUCTIVE FRAUD  (against CNA and Columbia Casualty).**

218.   First Interstate re-asserts and re-alleges all contentions and allegations contained in the preceding paragraphs.

219.   At the outset of the Kelly Logging Action, First Interstate tendered the Complaint in the

-42-

Kelly Logging Action to its insurer, Columbia Casualty. That Complaint specifically asserted claims for punitive and compensatory damages.

220.    Columbia Casualty had a legal duty to respond to the tender.  Specifically, Columbia Casualty had a legal duty to affirm or deny coverage for the claims asserted by Kelly Logging in the Kelly Logging Action. § 33-18-201(5), MCA.

221.    Columbia Casualty also had a fiduciary duty to its insured, First Interstate, to keep First Interstate informed of the coverages available for defense, settlement or indemnity of the claims asserted by Kelly Logging in the Kelly Logging Action.

222.    At all times, First Interstate had a right to rely on the acts and representations of Columbia Casualty and Fricano, who owed First Interstate a duty to disclose.

223.    On June 20, 2013, in response to First Interstate's tender of defense, Columbia Casualty accepted coverage for the Lending Act Claims contained in the Complaint, including wrongful setoff and bad faith, both of which included specific claims for punitive and compensatory damages.

224.    By Letter in June 2013, Columbia Casualty represented that "the Kelly Logging Action triggers coverage under the Policy, subject to **certain reservation of rights set forth below.**"  The "certain reservation of rights set forth" in the letter did not include any mention of or reservation of rights concerning punitive damages or compensatory damages with an attorney fees component. The Letter constitutes an explicit and false misrepresentation of Columbia Casualty's eventual coverage position, including a failure to disclose that it was denying coverage for any punitive damage award or any compensatory award.

-43-

225. From the outset, Columbia Casualty acknowledged its obligation to "raise additional defenses to coverage that may come to light as additional facts become known."

226. Columbia Casualty received every pertinent piece of information about the Kelly Logging Action, and knew that the punitive damage claims and attorney fees claims continued to be asserted as part of the lending act claims. Despite repeated restatements of the claim for punitive damages by Kelly Logging, Columbia Casualty never raised additional defenses to coverage, including the definition of loss in the BPL policy, which exempts punitive damages as a part of loss in that part of the policy. Columbia Casualty wrongfully failed to disclose the actual post-verdict position it now takes, and purports to have maintained from the start.

227. In March 2014, the district court granted summary judgment in favor of Kelly Logging on the wrongful setoff claim, which included claims for compensatory and punitive damages. With liability established for that claim, Columbia Casualty's legal counsel, Johanna Fricano, knew that a claim of punitive damages would be presented to the jury. Despite this information, Columbia Casualty did not raise any policy defenses regarding punitive damages or inform First Interstate of any coverage limitations with respect to punitive damages, and wrongfully failed to disclose the actual post-verdict position it now takes, and purports it maintained all along. Columbia Casualty also knew that a claim for attorney fees would be presented post-trial, but failed to raise any policy defenses regarding attorney fees.

228. On April 30, 2014, Crowley Fleck, representing First Interstate, specifically inquired about the status of Columbia Casualty's coverage position. Johanna Fricano confirmed

-44-

First Interstate's coverage for lending act claims up to $10,000,000, in the event of a bad trial outcome. She confirmed that Columbia Casualty was raising no new policy defenses to coverage. In response to the direct inquiry, Columbia Casualty affirmed coverage, and stated no limitations on the coverage for punitive damages. Fricano's representations constitute an explicit and false representation regarding Columbia Casualty's interpretation of the insurance contract as applied to the Kelly Logging Action. At all time, Columbia Casualty had a duty to disclose its actual positions, and wrongfully failed to disclose the post-judgment position it now takes, and purports that it maintained all along.

229.   Columbia Casualty never indicated, or otherwise disclosed, prior to the verdict, that Columbia Casualty would question or deny coverage for punitive damages, or any attorney fees component of a compensatory award.

230.   From June 20, 2013 until after the verdict, Columbia Casualty repeatedly accepted and confirmed coverage for the Lending Act Claims of wrongful setoff subject only to "certain" reservations, which reservations did not include punitive damages or any attorney fees component of a compensatory award. Columbia Casualty never informed First Interstate that Columbia Casualty would dispute coverage for punitive damages arising from Lending Act Claims under the Endorsement based on a definition of "Loss" in the BPL Policy, or based on any other Policy provision. Columbia Casualty never informed First Interstate that it would deny coverage for attorney fees (including an attorney fee component of a compensatory award), as it purported to do after the entry of final judgment.

-45-

231.  Based on Columbia Casualty's actions and statements post-verdict, its pre-verdict express and tacit communications about its coverage position were false, and Columbia Casualty had no reason to believe its coverage position as expressed to First Interstate was true.  At all times, Columbia Casualty had a duty to disclose its actual positions, and wrongfully failed to disclose the post-verdict coverage positions it now takes, and purports that it maintained all along.

232.  Columbia Casualty made its representations regarding coverage and reservations in accordance with a legal duty to affirm or deny coverage to First Interstate within a reasonable time, and intending First Interstate to rely on its representations.

233.  Had Columbia Casualty questioned coverage for punitive damages or attorney fees under the Lenders Liability Endorsement, Columbia Casualty had a duty to deny coverage in response to tender of the complaint, or reserve its rights and file a declaratory judgment action to adjudicate the coverage dispute.

234.  First Interstate acted in reliance upon the truth of Columbia Casualty's representations regarding coverage, and First Interstate's reliance was justified.  First Interstate would have taken legal steps to protect itself from an uncovered verdict, including settling and/or demanding that Columbia Casualty settle within policy limits to protect First Interstate from any damages in excess of the retention amount and the policy limits.

235.  First Interstate suffered damages, and continues to suffer damages, as a result of its reliance upon Columbia Casualty's representations regarding coverage.

**COUNT VII:**        **VIOLATION OF THE UNFAIR TRADE PRACTICES ACT (against CNA and Columbia Casualty).**

236.  First Interstate re-asserts and re-alleges all contentions and allegations contained in the

-46-

preceding paragraphs.

237.   At the initiation of the Kelly Logging Action, First Interstate provided notice of the claim to Columbia Casualty.  First Interstate provided the Kelly Logging Complaint to Columbia Casualty.

238.   In response to First Interstate's tender of the claim, First Interstate acknowledged that the Kelly Logging Complaint alleged a covered claim under the Lender Liability Endorsement.

239.   In response to First Interstate's tender of claim, Columbia Casualty reserved its right to question coverage with respect to certain specific claims.

240.   In response to First Interstate's tender of claim, Columbia Casualty did not reserve its rights to question or dispute coverage for punitive damages under the Lender Liability Endorsement or any other part of the Policy, or for the attorney fees component of a compensatory award.

241.   Throughout the Kelly Logging Action and until after the verdict, Columbia Casualty never informed First Interstate that it would question or deny coverage for punitive damages under the Policy or the Lender Liability Endorsement.

242.   Throughout the Kelly Logging Action and until after the entry of final judgment, Columbia Casualty acknowledged its indemnity obligations with respect to compensatory damages, and never informed First Interstate that it would question or deny coverage for compensatory damages, including attorney fees and costs awarded as compensatory damages by the district court.

243.   Columbia Casualty's acts and omissions constitute a violation of § 33-18-201(1), MCA,

in that Columbia Casualty misrepresented facts and policy provisions relating to coverages relating to punitive and compensatory damages, claims placed in issue by the Complaint and subsequent pleadings.

244. Columbia Casualty's acts and omissions constitute a violation of § 33-18-201(4), MCA, in that Columbia Casualty is refusing to pay claims without conducting a reasonable investigation. Despite receiving all pertinent information regarding the Kelly Logging Action, Columbia Casualty's agents failed to review the material. Columbia Casualty's lawyer informed Crowley Fleck that she had been too busy to keep herself up to speed on the claim.

245. Columbia Casualty's acts and omissions constitute a violation of § 33-18-201(5), MCA, in that Columbia Casualty completely failed to affirm or deny coverage of the punitive damage claim within a reasonable time after notice of the claim.

246. Columbia Casualty's acts and omissions constitute a violation of § 33-18-201(6), MCA, in that Columbia Casualty neglected to attempt in good faith to effectuate prompt, fair and equitable settlements of the claims after liability was reasonably clear. Columbia Casualty did not consider or respond to a demand within Columbia Casualty's policy limits after the district court had granted summary judgment on the tort of wrongful setoff.

247. Columbia Casualty's acts and omissions constitute a violation of § 33-18-201(13), MCA, in that Columbia Casualty failed to promptly settle claims in the Kelly Logging Action in order to influence coverage or settlement of other claims pursuant to other portions of the Policy.

-48-

248.   Columbia Casualty's violations of the Unfair Trade Practices Act caused damage to First Interstate, including but not limited to the Policy proceeds of $10,000,000, amounts expended in excess of the policy limits, and other resulting and consequential damages.

249.   Columbia Casualty concealed material facts about the Policy with the purpose of depriving First Interstate of the benefits of the Policy.

250.   Columbia Casualty deliberately acted in conscious or intentional disregard of the high probability of injury to First Interstate.

251.   Columbia Casualty's actions constitute actual fraud and/or actual malice.

252.   First Interstate is entitled to an award of punitive damages pursuant to § 27-1-221, MCA.

**COUNT VIII:        NEGLIGENCE (Alternative Claim against BancServe).**

253.   First Interstate re-asserts and re-alleges all contentions and allegations contained in the preceding paragraphs.

254.   BancServe has acted as First Interstate Bank's insurance broker for many years. BancServe has worked with Tempi Ruth, a BancServe broker.

255.   In 2011, with advice from Ruth and/or BancServe, First Interstate requested that BancServe procure a new insurance package for First Interstate, to replace the BancInsure policy.  Ruth and/or BancServe undertook the broker's duty of procuring the insurance.

256.   Ruth and/or BancServe obtained several bids.  Some companies did not provide the same coverages provided by the BancInsure policy, and First Interstate rejected those bids. Ruth and/or BancServe pointed out several differences between the those policies and the BancInsure policy.

257.   Ruth and/or BancServe obtained a bid from CNA to replace the BancInsure policy.  The

-49-

CNA policy increased the retention and the premiums over those paid under the BancInsure policy, but Ruth and/or BancServe indicated that it replaced the BancInsure policy. Ruth and/or BancServe did not inform First Interstate of any differences in punitive damages coverages among the parts of the CNA policy, and did not inform First Interstate of any differences in punitive damages coverages between the CNA policy and the BancInsure policy.

258. Ruth and/or BancServe represented that the CNA policy replaced the BancInsure policy, noting that the retention amount and premium were both higher than the BancInsure policy.

259. Ruth and/or BancServe did not request changes in the CNA policy to adapt the policy to First Interstate's particular needs or to the laws of the states in which First Interstate operates. Ruth and/or BancServe did not analyze or explain First Interstate's risks, including any risk associated with punitive damages for lender liability.

260. Based on Ruth's and/or BancServe's recommendations, and in reliance upon their expertise, First Interstate entered into this particular contract of insurance with CNA and Columbia Casualty.

261. In the event the CNA policy does not provide coverage for punitive damages – which First Interstate disputes and denies – as alternative claim, First Interstate alleges that BancServe breached the duty of care owed to First Interstate to procure coverage which replaced the coverages available under the BancInsure policy.

262. BancServe and/or Ruth did not inform First Interstate of any limitations on BancServe's access to insurance carriers generally and to top 5 insurers specifically. They likewise did

not inform First Interstate of the possibility of obtaining coverage from other sources or other brokers.

263.   BancServe and Ruth were aware of the particular risks faced by the banking industry in Montana litigation.  BancServe and Ruth had a duty to procure insurance adequate to protect First Interstate from known risks, and/or to advise First Interstate regarding any potential inadequacies in its coverage.

264.   In the event the policy is determined to exempt coverage for punitive damages – which First Interstate denies and disputes – First Interstate alleges as an alternative cause of action that BancServe failed to procure an appropriate policy for First Interstate's business, and failed to inform First Interstate of BancServe's inability to procure the proper insurance to protect the risks encountered by First Interstate.

265.   At the time of the Kelly Logging claim, CNA notified Ruth and BancServe of CNA's coverage position.  Ruth and BancServe remained involved in the claim throughout the litigation.  At no time during the litigation did BancServe question whether the Columbia Casualty policy provided coverage for the punitive damage claims in the Kelly Logging case.  At no time did BancServe express the opinion that the Columbia Casualty policy would not provide coverage for the Kelly Logging claims, including punitive damages.

266.   After the jury verdict, CNA notified Ruth and/or  BancServe of its new coverage position, that the definition of "loss" precludes coverage for punitive damages under the Lender Liability Coverage Endorsement.

267.   Prior to August 15, 2014, when CNA communicated its new coverage determination to BancServe, First Interstate had no reason to suspect that BancServe and/or Ruth had acted

273.   First Interstate relied upon AH&T's expertise and report in analyzing the coverage provided by CNA and Columbia Casualty.  Based on AH&T's audit, First Interstate believed that it had adequate coverage for bankers liability, with no noted deficiencies for punitive damages.

274.   First Interstate had no reason to question or doubt AH&T's audit until after August 15, 2015, when CNA first declared that the BPL policy, and the Lender Liability Endorsement, did not provide coverage for punitive damages.

275.   First Interstate inquired of AH&T after the verdict and after the adverse coverage position taken by CNA on August 15, 2014, asking AH&T why the audit contained no mention of the definition of "Loss" in the BPL policy.  Dennis Gustafson of AH&T responded to the inquiry by stating that AH&T "missed" the policy definition that CNA and Columbia Casualty now contend exempts coverage for punitive damages in Lending Act cases.

276.   If the Columbia Casualty policy does not provide coverage for punitive damages arising from Lending Act claims – which First Interstate disputes and denies – then as an alternative cause of action, First Interstate alleges that AH&T negligently reviewed and negligently audited the First Interstate policies and provided an inaccurate report to First Interstate.

277.   If punitive damages are exempted, then AH&T's negligence caused damage to First Interstate.  Had AH&T indicated that the BPL policy contained language which could be asserted to exempt punitive damages from coverage for Lending Act Claims, First Interstate would have demanded that its insurer settle the claim within policy limits.  First Interstate would have taken all steps to protect itself from a judgment in excess of its

retention and in excess of the policy limits.

278.   If punitive damages are exempted, then AH&T is liable to First Interstate for any such damages recovered by Kelly Logging which are not covered by the CNA policies audited by AH&T.

WHEREFORE, First Interstate prays for declarations, holdings and relief as follows:

1.   That Columbia Casualty owes a duty to provide coverage for punitive and compensatory damages, including interest and fees, awarded in the Kelly Logging Action under its Policy of insurance;

2.   That Columbia Casualty owes a duty to provide coverage for other damages awarded by the state district court in the Kelly Logging Action, including attorney fees; and that Columbia Casualty has a duty to procure or pay for an appeal bond.

3.   That Columbia Casualty has breached the insurance contract by disputing and denying coverage for compensatory and punitive damages;

4.   That Columbia Casualty is barred by the doctrines of estoppel, waiver, and reasonable expectations from disputing coverage for punitive and compensatory damages under the Policy, and breaches the contract by doing so;

5.   That Columbia Casualty committed constructive fraud in its representations to First Interstate regarding the Policy provisions, resulting in damages to First Interstate;

6.   That Columbia Casualty violated the Unfair Trade Practice Act;

7.   That Columbia Casualty is liable for all damages incurred by First Interstate Bank for breach of contract, anticipatory breach of contract, estoppel, waiver, constructive fraud, and violation of the Unfair Trade Practices Act;

8.      That Columbia Casualty is liable for punitive damages in this suit;

9.      Alternatively, that BancServe is negligent and liable for damages.

10.     Alternatively, that AH&T is negligent and liable for damages.

11.     For pre-judgment and post-judgment interest as allowed by law;

12.     For attorneys' fees as applicable under Montana law; and

13.     For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a jury.


DATED this 6th day of May, 2015.


                                        SHEEHY LAW FIRM

                                        MARTHA SHEEHY
                                        P. O. Box 584
                                        Billings, Montana 59103-0584
                                        Msheehy@sheehylawfirm.com


                                        Attorney for Plaintiff First Interstate Bank

CLERK OF THE
DISTRICT COURT
KRISTIE LEE BOALTER

2015 MAY 13  PM 1 53

FILED

BY _____ *HB* (5)

DEPUTY

Martha Sheehy
SHEEHY LAW FIRM
P. O. Box 584
Billings, Montana 59103-0584
Telephone: (406) 252-2004
msheehy@sheehylawfirm.com

Attorney for Plaintiff First Interstate Bank

MONTANA THIRTEENTH JUDICIAL DISTRICT, YELLOWSTONE COUNTY

FIRST INTERSTATE BANK, a Montana
Corporation,

                               Plaintiff,

           -vs-

COLUMBIA CASUALTY COMPANY, a wholly
owned subsidiary of CNA, BANCSERVE, INC., a
Montana Corporation, and AH&T, a Virginia
company.

                            Defendants.

Cause No. DV 15-569

**Affidavit of Service of Summons and
Complaint**

Dirk Whitney, being first duly sworn, states as follows:

1.    I am a bona-fide resident of the State of Montana and am over the age of 18.

2.    I am not a party to nor interested in this action.

3.    I have not served process more than ten times.

4.    I served the Complaint and Summons in this action upon the Defendant Columbia

        Casualty Company, by leaving two copies of the Complaint and Summons with the

        Montana Commissioner of Securities and Insurance, which is authorized to accept service

        pursuant to §33-1-601, this 7th day of May, 2015, at _8:05_ a.m.

-1-

5.     The person who accepted service at the Montana Commissioner of Securities and

Insurance is named   *KATE  LAWLER* .

DATED this   *7th*   day of May, 2015.


Dirk Whitney, Affiant


STATE OF MONTANA                          )
                                          ) ss:
County of Lewis & Clark                   )

         On this   7th   day of May, 2015, before me, a Notary Public for the State of Montana,
personally appeared Dirk Whitney, known to me to be the person whose name is subscribed to the
within instrument and acknowledged to me that he executed the same.


Print:  Linda DeClair
Notary Public
Residing at Helena, Lewis & Clark County
My commission expires   Jan. 4, 2016

LINDA DeCLAIR
NOTARY PUBLIC for the
State of Montana
Residing at Helena, Montana
My Commission Expires
January 4, 2016

-2-

Martha Sheehy
SHEEHY LAW FIRM
P. O. Box 584
Billings, Montana 59103-0584
Telephone: (406) 252-2004
msheehy@sheehylawfirm.com

    Attorney for Plaintiff First Interstate Bank

CLERK OF THE
DISTRICT COURT
KRISTIE LEE BOELTER

2015 MAY 13  PM 1 53

FILED
BY _____ HB (6)_____
DEPUTY

MONTANA THIRTEENTH JUDICIAL DISTRICT, YELLOWSTONE COUNTY

| | |
|---|---|
| FIRST INTERSTATE BANK, a Montana Corporation, | Cause No. DV 15-569 |
| Plaintiff, | **Affidavit of Service of Summons and Complaint** |
| -vs- | |
| COLUMBIA CASUALTY COMPANY, a wholly owned subsidiary of CNA, BANCSERVE, INC., a Montana Corporation, and AH&T, a Virginia company. | |
| Defendants. | |

Dirk Whitney, being first duly sworn, states as follows:

1.    I am a bona-fide resident of the State of Montana and am over the age of 18.

2.    I am not a party to nor interested in this action.

3.    I have not served process more than ten times.

4.    I served the Complaint and Summons in this action upon the Defendant BancServe, Inc., by leaving with _STEVE TURKIEWICZ_, this 7th day of May, 2015, at _8:19_ a.m.

5.    The person who accepted service is the _PRESIDENT - CEO_ at BancServe.

-1-

DATED this __7ᵗᴴ__ day of May, 2015.

Dirk Whitney, Affiant.

STATE OF MONTANA )
                 ) ss:
County of Lewis & Clark )

On this __7ᵗʰ__ day of May, 2015, before me, a Notary Public for the State of Montana, personally appeared Dirk Whitney, known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same.

LINDA DeCLAIR
NOTARY PUBLIC for the
State of Montana
Residing at Helena, Montana
My Commission Expires
January 4, 2016

Print: Linda DeClair
Notary Public
Residing at Helena, Lewis & Clark County
My commission expires Jan. 4, 2016

-2-